UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-tp-80001-AMC

UNITED STATES OF AMERICA,

v.

NICHOLAS F. RAFFA,

      Defendant.
_____/

FILED BY KJZ D.C.
Aug 16, 2021
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

**ORDER ON PRELIMINARY PROBABLE CAUSE HEARING**

      Defendant, NICHOLAS F. RAFFA, appeared before the Court on August 13, 2021, for a preliminary probable cause hearing on the Petition for Warrant or Summons for Offender under Supervision ("Petition") [DE 3]. Defendant waived his right to be physically present in the courtroom and consented to appear via Zoom video conference (VTC) from the St. Lucie County Jail. The Court found that Defendant knowingly and voluntarily and with the advice of competent counsel waived his personal presence in the courtroom on August 13, 2021 and agreed to appear by Zoom VTC from the St. Lucie County Jail for the hearing. Because the Court also found that the hearing could not be delayed without serious harm to the interests of justice, the hearing was conducted by Zoom VTC.

      Defendant was originally convicted in the Eastern District of Tennessee of (1) Conspiracy to Distribute and Possession with Intent to Distribute a Quantity of Oxycodone, in violation of 21 U.S.C. §§ 846, 84l(a)(l) and (b)(l)(C), a Class C Felony; (2) Conspiracy to Distribute and Possession with Intent to Distribute a Quantity of Marijuana, in violation of 21 U.S.C. §§ 846, 841(a)(l), and (b)(l)(D), a Class D Felony; and (3) Conspiracy to Conduct and Attempt to Conduct

1

a Financial Transaction Affecting Interstate and Foreign Commerce Involving the Proceeds of an Illegal Activity (Money Laundering), in violation of 18 U.S.C. §§ 1956 (a)(l)(A)(I) and (h), a Class C Felony.

On June 27, 2011, the Honorable R. Leon Jordan, United States District Judge for the Eastern District of Tennessee, sentenced Defendant to 175 months in prison as to Counts 1 and 3, and 60 months as to Count 2 to be served concurrently, followed by three years of supervised release. A $300 special assessment was also imposed. In addition to the standard conditions of supervision, Defendant was ordered to comply with the special condition that he participate in a program of testing and/or treatment for drug and/or alcohol abuse, as directed by a probation officer, until such times as he is released from the program by a probation officer. On January 11, 2016, Defendant's term of imprisonment was reduced from 175 months to 141 months. Defendant's term of supervised release commenced on December 27, 2019. On February 3, 2021, jurisdiction for Defendant's supervised release was transferred to the Honorable Aileen M. Cannon, United States District Judge, Southern District of Florida. [DE 1].

Defendant is now charged pursuant to the Petition [DE 3] with violating a mandatory condition of his supervised release by failing to refrain from violation of the law. According to the Petition, on or about July 4, 2021, in Palm Beach County, Florida, Defendant did commit Felony Battery, contrary to F.S. 784.041(1).

## PRELIMINARY PROBABLE CAUSE FINDINGS

At the preliminary probable cause hearing, the parties agreed that the Government could proceed by proffer. Further, the parties agreed that the probable cause hearing and detention hearing could proceed simultaneously. The Court took judicial notice of Petition, the

Government's memorandum, and the Presentence Investigation Report. The Government's and the Defendant's exhibits were admitted without objection. The Court heard testimony from United States Probation Officer Donn Grice, Deputy King of the Palm Beach County Sheriff's Office, and Defendant's girlfriend, Jessica Sciortino. These sources establish as follows.

On July 4, 2021, Deputy King of the Palm Beach County Sheriff's Office responded to 7890 Blairwood Circle South, Lake Worth, Florida concerning a domestic disturbance. Deputy King was met by Defendant and his girlfriend, Mrs. Sciortino. Deputy King thought Mrs. Sciortino and Defendant may have been drinking but she did not smell alcohol on their breath or assess them as intoxicated.

According to Mrs. Sciortino, Mrs. Sciortino's daughter and Defendant's son were also in the residence during the incident and upon Deputy King's arrival. According to Mrs. Sciortino, both she and Defendant had two beers each at a party and Defendant drove them home.

According to Mrs. Sciortino, Mr. and Mrs. Sciortino are separated and in the process of divorce. Mr. Sciortino does not want the divorce and is a volatile and jealous person. They presently live apart.

Both Defendant and Mrs. Sciortino reported to Deputy King that Mrs. Sciortino's husband, Michael Sciortino, came to their jointly owned residence where Mrs. Sciortino resides, and threatened both Defendant and Mrs. Sciortino by banging on the front door.

According to Mrs. Sciortino, she called for police assistance three times and was able to contact police and ask for assistance on the third time.[1] Defendant, however, did not wait for police

---

[1] The phone records seem to create a discrepancy in the timing and location of Mrs. Sciortino's phone calls to police per the questioning of Mrs. Sciortino by the prosecutor. As to the timing, although the time on the phone records apparently indicate that two of the calls to police occurred prior to the disturbance, the Court believes it is unlikely

3

assistance; instead, he went outside to confront Mr. Sciortino himself.

Defendant spontaneously advised Deputy King that he exited the residence through a side door and went to the front yard where Mr. Sciortino was standing. Defendant spontaneously stated to Deputy King that he tackled Mr. Sciortino from behind. Mr. Sciortino immediately left the scene after the fight concluded and Deputy King did not have the ability to question Mr. Sciortino at the time.

Deputy King asked Defendant why he left the safety of his residence, at which time Defendant responded, "I didn't know if Mr. Sciortino had a gun." Deputy King asked Defendant if he looked outside to see if Mr. Sciortino had a weapon in his hand and Defendant replied no. Deputy King was advised that there was a video of the altercation, but that the video was inside where the children were. Deputy King did not want them to wake up the children, and informed that she could see the video at another time. Mrs. Sciortino later reported that the video did not capture the incident. No pictures were taken during Deputy King's July 4, 2021 visit to the residence.

According to Mrs. Sciortino, she and Defendant were at a party with their children when Mr. Sciortino called Defendant 26 times and also sent text messages within a short amount of time. Mrs. Sciortino could hear the conversations because they were on speaker phone, and Mr. Sciortino was threatening to kill Defendant and her. When Mr. Sciortino arrived, he began banging on the front door, yelling, and threatening to kill them. Mrs. Sciortino believed Mr. Sciortino was

---

that Mrs. Sciortino called the police twice before the incident occurred. The Court believes that perhaps there is an inaccuracy in the phone records which can be addressed further, if necessary, at the final revocation hearing. As to the location, Mrs. Sciortino testified that she made the calls from the residence and not from the party as the phone records suggest. The Court finds that whether she called police from the party or whether she called police from the residence is not material to probable cause.

intoxicated. The children were afraid, so Mrs. Sciortino brought them into a bedroom and stayed with them during the altercation. Mrs. Sciortino was also afraid of Mr. Sciortino.

On July 6, 2021, Defendant reported to the United States Probation Office and submitted to a urinalysis. During this office visit, Defendant reported he had contact with law enforcement from the Palm Beach County Sheriff's Office over the weekend. Defendant reported he was at Mrs. Sciortino's residence when Mr. Sciortino arrived and banged on the door in a threatening manner. Defendant reported that he called the police because Mr. Sciortino was making threats towards him and the children inside of the residence. Due to the delayed police response, Defendant advised that he went outside to confront Mr. Sciortino, which escalated into a physical altercation between the two men. Defendant admitted to hitting Mr. Sciortino twice giving him a black eye and knocking out his front tooth. Defendant reported that Mr. Sciortino left the area. Defendant did not exhibit any physical marks to indicate his was in a physical altercation on July 4, 2021.

That same day, July 6, 2021, Probation Officer Grice contacted Deputy King. Deputy King reported she did not have enough information to determine who was the aggressor in the disturbance. Therefore, Deputy King did not make an arrest on July 4, 2021 pending further investigation.

On July 6, 2021, Deputy King followed up with Mr. Sciortino concerning the domestic disturbance on July 4, 2021. Mr. Sciortino appeared to be injured from a fight and had two black eyes, a missing tooth, a scar above his right eyebrow, bruising on his left rib cage, a busted lip, and bruising on his left upper arm, neck, and center chest area.

Mr. Sciortino reported to Deputy King that he still owns the house with Mrs. Sciortino. Mr. Sciortino reported he went over to his home to check on his daughter after receiving information

from a third party that Mrs. Sciortino and Defendant were intoxicated. Mr. Sciortino stated to Deputy King, he only remembers waking up at the hospital with his injuries. Deputy King confirmed with Mr. Sciortino he wanted to press charges.

On July 12, 2021, Deputy King called Probation Officer Grice and advised that her investigation established that Defendant had committed Felony Battery on Mr. Sciortino on July 4, 2021. Deputy King provided Probation Officer Grice with a probable cause affidavit and photos of Mr. Sciortino's injuries. The pictures taken of Mr. Sciortino's injuries clearly reveal that he was hit more than twice.

On July 14, 2021, Probation Officer Grice contacted Mr. Sciortino to inquire his account of the of the events that occurred on July 4, 2021. Mr. Sciortino remembered going to the residence to check on the welfare of his daughter. He further remembered knocking on the front door before he was rendered unconscious by Defendant.

The Court has carefully reviewed the Petition [DE 3], the Presentence Investigation Report, the Judgment from the underlying federal criminal case, the Government's proffer, the exhibits, and the testimony of Probation Officer Grice, Deputy King, and Mrs. Sciortino. The Court finds there is strong direct and circumstantial evidence in this case which establishes probable cause for the violation alleged. The Court finds that Probation Officer Grice and Deputy King were both credible witnesses and the Court credits their testimony.  To the extent Mrs. Sciortino's testimony contradicted the testimony of Probation Officer Grice and Deputy King, the Court finds her testimony not to be credible. She is clearly biased against Mr. Sciortino and in favor of Defendant. The Court finds that there is probable cause to support the violation as alleged in the Petition. Defendant could have stayed inside the residence and waited for the police to arrive. Instead,

Defendant took it upon himself to exit the residence and attack Mr. Sciorino from behind and strike him numerous times, causing Mr. Sciorino to suffer serious injuries which required hospital treatment.

**DONE and ORDERED** in chambers at West Palm Beach, Palm, Beach County, in the Southern District of Florida, this 16th day of August, 2021.

_____
WILLIAM MATTHEWMAN
United States Magistrate Judge