UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-tp-80001-AMC

UNITED STATES OF AMERICA,

v.

NICHOLAS F. RAFFA,

        Defendant.
_____/

**DETENTION ORDER**

      The Defendant, NICHOLAS F. RAFFA, appeared before the Court on August 13, 2021, for a detention hearing. Defendant waived his right to be physically present in the courtroom and consented to appear via Zoom video conference (VTC) from the St. Lucie County Jail. The Court found that Defendant knowingly and voluntarily and with the advice of competent counsel waived his personal presence in the courtroom on August 13, 2021 and agreed to appear by Zoom VTC from the St. Lucie County Jail for the hearing. Because the Court also found that the hearing could not be delayed without serious harm to the interests of justice, the hearing was conducted by Zoom VTC.

      Defendant was originally convicted in the Eastern District of Tennessee of (1) Conspiracy to Distribute and Possession with Intent to Distribute a Quantity of Oxycodone, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(C), a Class C Felony; (2) Conspiracy to Distribute and Possession with Intent to Distribute a Quantity of Marijuana, in violation of 21 U.S.C. §§ 846, 841(a)(1), and (b)(1)(D), a Class D Felony; and (3) Conspiracy to Conduct and Attempt to Conduct a Financial Transaction Affecting Interstate and Foreign Commerce Involving the Proceeds of an

1

Illegal Activity (Money Laundering), in violation of 18 U.S.C. §§ 1956 (a)(l)(A)(I) and (h), a Class C Felony.

On June 27, 2011, the Honorable R. Leon Jordan, United States District Judge for the Eastern District of Tennessee, sentenced Defendant to 175 months in prison as to Counts 1 and 3, and 60 months as to Count 2 to be served concurrently, followed by three years of supervised release. A $300 special assessment was also imposed. In addition to the standard conditions of supervision, Defendant was ordered to comply with the special condition that he participate in a program of testing and/or treatment for drug and/or alcohol abuse, as directed by a probation officer, until such times as he is released from the program by a probation officer. On January 11, 2016, Defendant's term of imprisonment was reduced from 175 months to 141 months. Defendant's term of supervised release commenced on December 27, 2019. On February 3, 2021, jurisdiction for Defendant's supervised release was transferred to the Honorable Aileen M. Cannon, United States District Judge, Southern District of Florida. [DE 1].

## I.     Findings of Fact

### A.  Nature and Circumstances of the Offense

Defendant is now charged pursuant to the Petition [DE 3] with violating a mandatory condition of his supervised release by failing to refrain from violation of the law. According to the Petition, on or about July 4, 2021, in Palm Beach County, Florida, Defendant did commit Felony Battery, contrary to F.S. 784.041(1).

### B.  Weight of the Evidence

The weight of the evidence against Defendant is strong. At the detention hearing, the parties agreed that the Government could proceed by proffer. Further, the parties agreed that the

probable cause hearing and detention hearing could proceed simultaneously. The Court took judicial notice of Petition, the Government's memorandum, and the Presentence Investigation Report. The Government's and the Defendant's exhibits were admitted without objection. The Court heard testimony from United States Probation Officer Donn Grice, Deputy King of the Palm Beach County Sheriff's Office, and Defendant's girlfriend, Jessica Sciortino. These sources establish as follows.

On July 4, 2021, Deputy King of the Palm Beach County Sheriff's Office responded to 7890 Blairwood Circle South, Lake Worth, Florida concerning a domestic disturbance. Deputy King was met by Defendant and his girlfriend, Mrs. Sciortino. Deputy King thought Mrs. Sciortino and Defendant may have been drinking but she did not smell alcohol on their breath or assess them as intoxicated.

According to Mrs. Sciortino, Mrs. Sciortino's daughter and Defendant's son were also in the residence during the incident and upon Deputy King's arrival. According to Mrs. Sciortino, both she and Defendant had two beers each at a party and Defendant drove them home.

According to Mrs. Sciortino, Mr. and Mrs. Sciortino are separated and in the process of divorce. Mr. Sciortino does not want the divorce and is a volatile and jealous person. They presently live apart.

Both Defendant and Mrs. Sciortino reported to Deputy King that Mrs. Sciortino's husband, Michael Sciortino, came to their jointly owned residence where Mrs. Sciortino resides, and threatened both Defendant and Mrs. Sciortino by banging on the front door.

According to Mrs. Sciortino, she called for police assistance three times and was able to

contact police and ask for assistance on the third time.[1] Defendant, however, did not wait for police assistance; instead, he went outside to confront Mr. Sciortino himself.

Defendant spontaneously advised Deputy King that he exited the residence through a side door and went to the front yard where Mr. Sciortino was standing. Defendant spontaneously stated to Deputy King that he tackled Mr. Sciortino from behind. Mr. Sciortino immediately left the scene after the fight concluded and Deputy King did not have the ability to question Mr. Sciortino at the time.

Deputy King asked Defendant why he left the safety of his residence, at which time Defendant responded, "I didn't know if Mr. Sciortino had a gun." Deputy King asked Defendant if he looked outside to see if Mr. Sciortino had a weapon in his hand and Defendant replied no. Deputy King was advised that there was a video of the altercation, but that the video was inside where the children were. Deputy King did not want them to wake up the children, and informed that she could see the video at another time. Mrs. Sciortino later reported that the video did not capture the incident. No pictures were taken during Deputy King's July 4, 2021 visit to the residence.

According to Mrs. Sciortino, she and Defendant were at a party with their children when Mr. Sciortino called Defendant 26 times and also sent text messages within a short amount of time. Mrs. Sciortino could hear the conversations because they were on speaker phone, and Mr. Sciortino

---

[1] The phone records seem to create a discrepancy in the timing and location of Mrs. Sciortino's phone calls to police per the questioning of Mrs. Sciortino by the prosecutor. As to the timing, although the time on the phone records apparently indicate that two of the calls to police occurred prior to the disturbance, the Court believes it is unlikely that Mrs. Sciortino called the police twice before the incident occurred. The Court believes that perhaps there is an inaccuracy in the phone records which can be addressed further, if necessary, at the final revocation hearing. As to the location, Mrs. Sciortino testified that she made the calls from the residence and not from the party as the phone records suggest. The Court finds that whether she called police from the party or whether she called police from the residence is not material to this detention order.

was threatening to kill Defendant and her. When Mr. Sciortino arrived, he began banging on the front door, yelling, and threatening to kill them. Mrs. Sciortino believed Mr. Sciortino was intoxicated. The children were afraid, so Mrs. Sciortino brought them into a bedroom and stayed with them during the altercation. Mrs. Sciortino was also afraid of Mr. Sciortino.

On July 6, 2021, Defendant reported to the United States Probation Office and submitted to a urinalysis. During this office visit, Defendant reported he had contact with law enforcement from the Palm Beach County Sheriff's Office over the weekend. Defendant reported he was at Mrs. Sciortino's residence when Mr. Sciortino arrived and banged on the door in a threatening manner. Defendant reported that he called the police because Mr. Sciortino was making threats towards him and the children inside of the residence. Due to the delayed police response, Defendant advised that he went outside to confront Mr. Sciortino, which escalated into a physical altercation between the two men. Defendant admitted to hitting Mr. Sciortino twice giving him a black eye and knocking out his front tooth. Defendant reported that Mr. Sciortino left the area. Defendant did not exhibit any physical marks to indicate his was in a physical altercation on July 4, 2021.

That same day, July 6, 2021, Probation Officer Grice contacted Deputy King. Deputy King reported she did not have enough information to determine who was the aggressor in the disturbance. Therefore, Deputy King did not make an arrest on July 4, 2021 pending further investigation.

On July 6, 2021, Deputy King followed up with Mr. Sciortino concerning the domestic disturbance on July 4, 2021. Mr. Sciortino appeared to be injured from a fight and had two black eyes, a missing tooth, a scar above his right eyebrow, bruising on his left rib cage, a busted lip, and bruising on his left upper arm, neck, and center chest area.

Mr. Sciortino reported to Deputy King that he still owns the house with Mrs. Sciortino. Mr. Sciortino reported he went over to his home to check on his daughter after receiving information from a third party that Mrs. Sciortino and Defendant were intoxicated. Mr. Sciortino stated to Deputy King, he only remembers waking up at the hospital with his injuries. Deputy King confirmed with Mr. Sciortino he wanted to press charges.

On July 12, 2021, Deputy King called Probation Officer Grice and advised that her investigation established that Defendant had committed Felony Battery on Mr. Sciortino on July 4, 2021. Deputy King provided Probation Officer Grice with a probable cause affidavit and photos of Mr. Sciortino's injuries. The pictures taken of Mr. Sciortino's injuries clearly reveal that he was hit more than twice.

On July 14, 2021, Probation Officer Grice contacted Mr. Sciortino to inquire his account of the of the events that occurred on July 4, 2021. Mr. Sciortino remembered going to the residence to check on the welfare of his daughter. He further remembered knocking on the front door before he was rendered unconscious by Defendant.

Defendant also has a significant criminal history, including violent offenses. Two arrests are particularly significant. The first is that in 1998, Defendant stole a vehicle and when an elderly passerby stopped to observe him, Defendant struck the elderly victim in the head with a club. The elderly victim received several stitches to the left side of his head as a result of the assault. The second is that Defendant used his vehicle to strike the vehicle of a former girlfriend, who later became his wife, several times causing her to crash her vehicle. When the victim exited her vehicle, Defendant punched the victim in the face, causing her to lose consciousness and later requiring stiches. When the victim regained consciousness at the scene, she observed Defendant smashing

out the windows of her vehicle with sticks and a cinder block. Defendant also gained entry into the vehicle and began assaulting another passenger.

Defendant also has a significant history of substance abuse, and he admitted to using drugs and alcohol following the July 4, 2021 incident, in a manner violating the conditions of his supervised release. Defendant also admitted to changing his residence without notifying probation, again in violation of the conditions of his supervised release.

## II.     Reasons for Detention

Federal Rule of Criminal Procedure Rule 32.1(a)(6) provides that the magistrate judge may release or detain a person charged with violating probation under the provisions of 18 U.S.C. § 3143(a)(1). Rule 32.1(a)(6) places the burden on the defendant to establish that he will not flee or pose a danger to any other person or to the community. A defendant shall be detained unless the judge finds by clear and convincing evidence that the defendant is not likely to flee or pose a danger to the safety of any other person or the community if released.

The Court finds that Probation Officer Grice and Deputy King were both credible witnesses and the Court credits their testimony.   To the extent Mrs. Sciortino's testimony contradicted the testimony of Probation Officer Grice and Deputy King, the Court finds her testimony not to be credible. She is clearly biased against Mr. Sciortino and in favor of Defendant.

The Court finds that Defendant rebutted that he is not a risk of flight. Defendant does not have a significant history of fleeing or failing to appear, and it is significant that he turned himself over to the Marshals upon learning of the warrant for his arrest. The Court does not find that Defendant presents a serious risk of flight if released and declines to detain him on that basis.

However, the Court finds that Defendant is a danger to the safety of others and the

community if released. Given all of the facts of this case, Defendant's lengthy and violent criminal history, including beating an elderly victim, and beating and continuing to pursue and attack his former girlfriend, the Court finds that Defendant is a danger to the community, and, further, that Defendant has failed to sustain his burden under Rule 32.1(a)(6). In this case, it is clear that Defendant violently attacked Mr. Sciortino from behind and punched him numerous times, causing serious injuries which required hospital treatment. Defendant's statement to Probation Officer Grice that he only struck Mr. Sciortino twice is false and is belied by the evidence. Defendant could have remained in the home until police arrived but instead chose to exit the home and violently attack Mr. Sciortino. Defendant's attack was unnecessary and did not constitute self-defense. When combined with his other supervised release violations, his prior history of criminal arrests and convictions for violent offenses, and his violent attack in this case, there is no doubt in the Court's view that Defendant poses a serious danger to the community, to Mr. Sciortino, and potentially to Mrs. Sciortino and the minor children. The Court simply does not trust Defendant to refrain from violent conduct and comply with all of his conditions of supervision if released. Therefore, he must be detained.

### III.   Directions Regarding Detention

Accordingly, IT IS HEREBY ORDERED that the Defendant be committed to the custody of the Attorney General for confinement in a corrections facility. This Court also directs that the Defendant be afforded reasonable opportunity for private consultation with counsel; and the Court directs that, on order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the Defendant is confined deliver the Defendant to a United States Marshal for the purpose of an appearance in connection with a court

proceeding.

**DONE and ORDERED** in chambers at West Palm Beach, Palm, Beach County, in the Southern District of Florida, this 16th day of August, 2021.

_William Matthewman_
WILLIAM MATTHEWMAN
United States Magistrate Judge